**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DREAMANA N. KIRCHBAUM, | ) CASE NO. 1:24-CV-00381-CEH |
| Plaintiff, | ) CARMEN E. HENDERSON <br> ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) **MEMORANDUM OPINION & ORDER** |

**I. Introduction**

Plaintiff, Dreamana N. Kirchbaum ("Kirchbaum" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security finding she was no longer entitled to Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

The Social Security Administration previously determined that Claimant was disabled as of August 7, 2018 and awarded her SSI benefits as a child. (ECF No. 7, PageID #: 137). Upon review after Claimant attained age eighteen, it was determined she was no longer disabled as of December 23, 2021. (*Id.* at PageID #: 45). This decision was upheld on reconsideration and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On December 8, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, as well Claimant's aunt and an impartial vocational expert testified. (*Id.*). On March 22, 2023, the ALJ issued a

written decision finding Claimant's disability ended on December 23, 2021 and she had not become disabled again since that date. (*Id.* at PageID #: 45-58). The ALJ's decision became final on January 3, 2024, when the Appeals Council declined further review. (*Id.* at PageID #: 29).

On February 29, 2024, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 11). Claimant asserts the following assignments of error:

> (1) The ALJ erred when she found that Plaintiff's disability ceased when she attained 18 years of age as she continued to satisfy the criteria of Listing 12.04.
>
> (2) The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.

(ECF No. 9 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleged that she remained disabled due to the limiting signs and symptoms associated with her severe impairments. She testified that she was unable to work due to her seizures, noting that after an episode she experienced sleepiness and headache. She explained that she did not have friends, that she had difficulty getting along with others, and that she experienced bad anxiety in crowds. She outlined that she had difficulty with focusing and concentrating (hearing testimony).
>
> The claimant's aunt, Tammie Markley, testified related to the claimant's level of functioning. She reported that the claimant experienced two to three seizures per month after which she experienced a bad headache and needed to sleep. She indicated that the claimant did not socialize with others and spent most of her time in her room, and outlined that she had difficulties secondary to her learning difficulties that included getting stuck on words and forgetting what she reads. Further, she indicated that she was going to need to care for the claimant's baby (hearing testimony).

(ECF No. 7, PageID #: 49-51).

B. **Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

The claimant experienced signs and symptoms associated with her severe impairments. An Evaluation Team Report from May 7, 2020 reflect a history of special education services with documented weaknesses in the areas of decoding, reading fluency, written expression, math calculation, and math reasoning. It was noted that on the Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV) administered in May 2014, she achieved a full scale IQ score of 80, which was within the low average range, and her index scores were within the low average range. On the Wechsler Individual Achievement Test – Third Edition (WIAT-III) administered in May 2017, her math problem and numerical operations skills were within the low range, her skills for addition fluency, subtraction fluence, and multiplication fluency were below average, and her skills for word reading, pseudoword fluency, oral reading comprehension, and reading comprehension were within the average range. Additionally, her scores on the Kaufman Test of Educational Achievement – Third Edition (KTEA-3) were below average on spelling and written language, and within the average range for written expression. She was in the tenth grade at that time and received instruction in a regular education classroom with the support of an intervention specialist and accommodations that included small group, extended time, text to speech, check-in for understanding of directions, guided notes, redirect/cuing, frequent breaks, and a calculator and/or multiplication chart (7F/2-35).

The claimant continued to experience signs and symptoms associated with her severe impairments leading up to the cessation date. An Individualized Education Program (IEP) effective as of June 7, 2021 reflected annual measurable goals for written expression and math calculations (7F/36-55). Treatment notes from July 23, 2021 reflect that she required lamotrigine for management of her epilepsy (8F/4-5). During a telehealth evaluation of her epilepsy on September 27, 2021, the claimant's aunt reported that she experienced one to two small episodes of staring with confusion per month for the prior six months. However, she denied any generalized tonic clonic seizures. The treatment notes reflect that a brain MRI showed right greater than left extensive malformation and a video electroencephalogram (EEG) suggested multifocal epilepsy. Upon examination, her affect, cognition, and coordination were normal. She had no ataxia, and her gait was normal. She was assessed with medically refractory epilepsy with good response to lamotrigine and levetiracetam (10F/6-9).

The claimant presented with her legal guardian for a psychological consultative examination with Michael Faust, PhD on November 22, 2021. She reported a history of a seizure disorder, noting that she had seizures once or twice per week. She noted that she would "zone out" and that "they [had not] been real bad." In fact, she explained that she no longer experienced grand mal seizures. The claimant noted that he had a history of special education services for a learning

3

disorder due to struggles with mathematics and, sometimes, reading. She described a longstanding history of depression and cried when discussing grief about a death in her family and managing the stressors associated with managing her seizure disorder. She denied social interest or having friends and outlined that she preferred to be left alone. She also explained that she did not go anywhere alone. She completed the history questionnaire, which was estimated to be at the sixth grade reading level, with very simplistic responses. She looked sluggish and tired and moved slowly, but she was neatly groomed with appropriate clothing. Her mood was depressed and withdrawn with a constricted range of emotions and blunted affect. She spoke in a monotone with a soft tone, but had no speech articulation problems, and her speech was 100 percent intelligible. While there were points that she became visibly more tense and agitated, particularly when she discussed her seizure activity, she showed no outward signs of anxiety and was calm and relaxed during most of the session. Her thought processes were logical, linear, and reality bound, and she showed no signs of guardedness, grandiosity, religiosity, suspiciousness, or paranoia. The claimant was unable to perform serial sevens or threes and recalled zero of three items after a five-minute delay, but "put forth limited effort in attempting this task." She offered a good history and exhibited no difficulty with her memory. The claimant demonstrated adequate insight into her psychological distress and offered adequate social judgment. On the Wechsler Adult Intelligence Scale – IV (WAIS-IV), she achieved a full scale IQ score of 63, with index scores that included 68 in verbal comprehension, 67 in perceptual reasoning, 71 in working memory, and 71 in processing speed. Her performance placed her within the extremely low range of ability, but Dr. Faust outlined that she "put forth poor effort throughout the testing and was very quick to give up…without even thinking about the question or task." Accordingly, her performance was "significantly lower than expected." She was assessed with major depressive disorder, single episode, severe, without psychotic symptoms (9F).

Based on the evaluation, Dr. Faust provided the following functional assessment. Due to her lack of effort on testing and his lack of access to school records, and he was unable to assess the claimant's level intellectual functioning or capacity for learning. However, she did exhibit difficulty with depression, which affect her ability to carry out instructions. She exhibited mild attention deficits likely secondary of her sluggishness and depression during the evaluation and did not persist at mental status or testing tasks. She also exhibited a slower work pace, consistent with depression. Accordingly, she was expected to struggle with attention deficits, slower pace, and lack of persistence secondary to her depressive disorder. At that time, she exhibited a major depressive disorder with significant depression, social withdrawal, apathy, and lack of interest that would impair her ability to interact with others in a work setting, but she remained able to interact with the examiner in a "cooperative manner." Finally, due to her continued symptoms of depression, Dr. Faust opined that it could be expected that the claimant would exhibit impairment in her ability to respond appropriately to work pressures in a work setting (9F).

4

The claimant sought treatment for her severe impairments. She presented for a follow up on her epilepsy with Deepak Lachhwani, MD on January 24, 2022. Her guardian reported three seizure episodes in the prior month but denied generalized tonic clonic seizures. She also noted that her depression was poorly treated, noting that her previous psychotherapy had been discontinued. She presented as disinterested upon examination with a very flat affect upon examination. Her fine motor movements, strength, tone, and muscle development were unremarkable, her sensation was intact, and her gait was normal. Home video recording of her seizure activity and behavioral health follow up were recommended, but no changes were made to her treatment regimen were made at that time (12F/9-12). On April 25, 2022, the claimant denied any seizure activity since December 2021. Additionally, she reported feeling cheerful, was smiling, and content about her compliance with medications and better seizure control. Her affect and cognition were normal upon examination, and her fine motor movements were intact. Her strength, tone, and muscle development were unremarkable in all four extremities, and she exhibited no apparent abnormalities to touch sensation. She exhibited no ataxia and her gait was normal. Her treatment regimen was unchanged (13F/6-9, 15F/12-16).

Dr. Lachhwani completed a medical opinion for the claimant on May 25, 2022 based on their treating relationship that started in June 2019. She experienced convulsive seizures with associated loss of consciousness once or twice per month. A typical seizure included looking dazed, acting confused, performing repetitive movements, and possibly walking out of the house or finding herself in a different part of her home. However, she experienced no grand mal seizures since May 2019. Post-ictal symptoms included confusion, exhaustion, and emesis and the need to rest one to two hours after a seizure. The claimant's fatigue and confusion may interfere with daily activities following a seizure. During and immediately after a seizure, the area must be cleared of hard areas or sharp objects, and she must be turned on her side to allow saliva to drain from her mouth. Stress may precipitate seizures, but she remained capable of moderate stress ("normal work"). Exertion can precipitate her seizures, but she retained the ability to sit and stand/walk at least six hours each. She could frequently lift/carry up to 10 pounds frequently, up to 20 pounds occasionally, and up to 50 pounds rarely. The claimant's treatment with lamotrigine and levetiracetam was effective, and medication side effects included dizziness, lethargy, coordination disturbance, and lack of alertness. She experienced the associated mental impairment of depression. Her impairments were likely to produce "good days" and "bad days," and it is likely that she would miss approximately two days per month related to them. The claimant also required basic seizure precautions that included limited exposure to heights of less than one foot, activities involving machinery or fire, as well as any activities in a body of water (14F).

Treatment for the claimant's severe impairments continued. During an epilepsy clinic follow up on August 8, 2022, she reported experiencing one of her "black

5

out" seizures on July 30, 2022 that lasted approximately five minutes. However, she denied any other seizure activity since the winter of 2021. Her attention and concentration were normal, her speech was fluent, naming was intact, and she was able to follow simple commands. She exhibited no tremor or abnormal movements her strength was 5/5 in her upper and lower extremities. Her coordination was symmetric and without dysmetria or dysdiadochokinesia. She also exhibited a normal gait with the ability to walk on heels and toes and the ability to tandem walk. She was assessed to have no increased seizures, "just some rare staring episodes." Additionally, she denied any side effects from her medications (15F/5-11). On September 6, 2022, she exhibited a normal mood and affect (16F/21). The claimant reported mood swings and occasional anxiety, but noted that she was "doing better" and that things were "alright" during an October 4, 2022 evaluation. She appeared adequately groomed upon examination and was cooperative and calm. Her speech was spontaneous, and her thought process was logical and organized. Her mood was euthymic with a full range of affect. She was able to sustain attention and concentration, her judgment and insight were fair, and her recent and remote memory were within normal limits. She was assessed with severe mood dysregulation disorder and dysthymia for which sertraline was prescribed (16F/43-49).

The signs and symptoms associated with the claimant's severe impairments remained stable overall. She presented for a mental health assessment with Jane Martinez, LISW on October 5, 2022. She reported that she felt "pretty good" upon examination, and she presented as cooperative. She was able to sustain concentration, her thought process was logical and organized with tight associations, and her insight and judgment were good. She was assessed with adjustment disorder with depressed mood (16F/52-57). During a November 1, 2022 evaluation, she reported that her symptoms associated with epilepsy were well controlled (16F/71-76). On November 15, 2022, the claimant reported that everything was "good," that she felt "good," and that her mood was "much better." She was adequately groomed and cooperative upon examination. Her thought process was logical and organized, her mood was euthymic, and she exhibited a full range of affect. She was able to sustain attention and concentration, her recent and remote memory were within normal limits, and her insight and judgment were good. She was assessed to be stabilizing, coping better, and that her adjustment was improving (16F/87-92).

Additionally, the record reflects that the claimant's weight has been at obese levels since the alleged onset date. Specifically, treatment records indicate that the claimant is five feet one inch tall, that her weight was as high as 219 pounds, and that her body mass index reading was as high as 41.38 kg/m2 (15F/8). As outlined previously, obesity is a medically determinable impairment that commonly leads to, and often complicates, chronic diseases of the musculoskeletal body system. Therefore, it is reasonable to assume that the claimant's weight contributed to the previously discussed limitations related to her degenerative disc disease and degenerative joint disease.

(ECF No. 7, PageID #: 51-54).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant attained age 18 on August 20, 2021, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of December 23, 2021, based on a redetermination of disability under the rules for adults who file new applications.

2. Since December 23, 2021, the claimant has had the following severe impairments: epilepsy; obesity; major depressive disorder; adjustment disorder; and learning disability (20 CFR 416.920(c)).

3. Since December 23, 2021, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that since December 23, 2021, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: except no climbing of ladders, ropes, or scaffolding; no exposure to unprotected heights, should not drive or operate heavy machinery/equipment; no exposure to open flames or bodies of water, no sharp tools; limited to simple routine tasks with simple short instructions, make simple decisions with occasional workplace changes; no strict production rate or hourly quotas; occasional interaction with coworkers, supervisors, and the public; essential functions of the job should not include reading instructions, writing reports, or performing math calculations.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 21, 2003 and is a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Since December 23, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

7

numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant's disability ended on December 23, 2021, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(ECF No. 7, PageID #: 47-48, 50, 57-58).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

When an individual is determined to be eligible for SSI based on disability prior to attaining age eighteen, the Commissioner is required to subsequently redetermine that

8

individual's eligibility for SSI "by applying the criteria used in determining initial eligibility for individuals who are age 18 or older." 42 U.S.C. § 1382c(a)(3)(H)(iii). The Social Security regulations outline a five-step process that an ALJ must use in determining whether an individual age eighteen or older is entitled to SSI: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). However, in an age-eighteen redetermination, step one does not apply. 20 C.F.R. § 416.987(b).

The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal, arguing that the ALJ erred in finding that Claimant's disability ceased because (1) Claimant continued to satisfy the criteria of Listing 12.04 and (2) the ALJ did not properly consider Claimant's symptoms and impairments in formulating the RFC.

9

**1. The ALJ did not err in finding that Claimant did not meet or equal a listing.**

Claimant first challenges the ALJ's conclusion that she did not meet or equal a listing, specifically Listing 12.04. (ECF No. 9 at 7). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Listing 12.04 addresses depressive, bipolar, and related disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(1). Listing 12.04 has "three paragraphs, designated A, B, and C" and a claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* at § 12.00(A)(2). To meet the paragraph B criteria, a claimant must show either an extreme limitation in one or a marked limitation in two of the following areas of mental functioning ability: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* at § 12.04. A marked limitation exists when the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is "seriously limited" whereas a moderate limitation exists when the claimant's ability is "fair." *Id.* at § 12.00(F)(2)(c)-(d).

Claimant asserts that the evidence supports marked—rather than moderate—limitations "in the same three of the 'B' criteria as when she was initially found disabled – interacting with

others, concentrate, persist or maintain pace, and adapt or manage himself." (ECF No. 9 at 9). While the ALJ relied on Claimant's ability to "live with others, watch television, and perform self-care with reminders," Claimant argues this is insufficient to support the ALJ's decision because the ALJ "failed to consider the effect of Plaintiff's continuing psychological symptoms and their effect on her ability to engage in substantial gainful activity on a full-time and sustained basis." (*Id.* at 10-11). Relying on *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (1997), Claimant seems to argue that because her "symptoms did not change since she was found disabled in 2018" and "[t]here was a prior finding by Social Security that she satisfied the criteria of Listing 112.04 which is akin to Listing 12.04," the ALJ was required to adopt the prior disability finding. (*Id.* at 11-12).

The Commissioner responds that after considering all the evidence, the ALJ reasonably concluded that Claimant had only moderate limitations in each of the paragraph B areas. (ECF No. 14 at 15-17). The Commissioner asserts that the Sixth Circuit clarified its *Drummond* decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), and, consistent with *Earley*, the ALJ "evaluated Plaintiff's current claim that involved a different regulatory standard (adult disability), including the relevant record evidence for the period at issue." (*Id.* at 19). The Commissioner argues that "to agree with Plaintiff's argument would mean that a claimant, who had previously been found disabled as a child, could never have a subsequent unfavorable adult disability determination, which would negate the age 18 redetermination regulations." (*Id.*).

As an initial matter, Claimant's reliance on *Drummond* is misplaced. In *Drummond*, the Sixth Circuit concluded that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent

11

changed circumstances." 126 F.3d at 842. Here, there is clearly a changed circumstance—Claimant attained age eighteen. Thus, pursuant to the relevant statute, Claimant must now show that she is disabled under the *adult* standards. 42 U.S.C. § 1382c(a)(3)(H)(iii); *see Lewis v. Comm'r of Soc. Sec.*, No. 1:09-CV-2450, 2011 WL 334850, at \*6 (N.D. Ohio Jan. 31, 2011) ("The finding of childhood disability finding is not dispositive nor binding on the adult redetermination."). Further, as the Commissioner argues, to find that the ALJ was bound by the previous disability determination would negate the statutory redetermination requirement and would directly contradict the regulations. *See* 20 C.F.R. § 416.987(a)(2) ("We may find that you are not now disabled even though we previously found that you were disabled."). Accordingly, the relevant question is whether substantial evidence supports the ALJ's conclusion that Claimant had only moderate limitations in each of the paragraph B criteria.

> The ALJ explained her decision concerning each of the paragraph B criteria:
>
> In understanding, remembering, or applying information, the claimant has moderate limitations. The claimant alleged that she has difficulty remembering generally and understanding generally with a noted history of special education services for documented weaknesses in the areas of decoding, reading fluency, written expression, math calculation, and math reasoning. However, the claimant was noted as able to be able to prepare simple meals. In addition, the record shows that the claimant exhibited normal recent and remote memory (7F/2-35, 9F, 16F/43-49, 16F/87- 92).
>
> In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that she has difficulty getting along with others and spending time in crowds. However, according to her statements, the claimant is also able to live with others. Finally, the medical evidence shows that the claimant was described as cooperative (9F, 16F/43-49, 16F/52-57, 16F/87-92).
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally and focusing generally. On the other hand, the claimant said that she is also able to watch television. Additionally, the record contains findings of a thought process that is logical, linear, organized, and/or reality bound as well as the ability to sustain attention and concentration (9F, 15F/5-11, 16F/43-49, 16F/52-57, 16F/87-

> 92).
>
> Finally, the claimant has moderate limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties handling change and managing her mood. That said, the claimant was able to perform self-care with reminders. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming as well as a normal/euthymic mood and full range of affect (9F, 16F/21, 16F/43-49, 16F/87-92).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(ECF No. 7, PageID #: 49). This discussion illustrates that in addition to Claimant's testimony and history of special education, the ALJ considered records indicating that Claimant had normal recent and remote memory; was cooperative during exams; demonstrated logical and organized thought process; was able to sustain attention and concentration; and had appropriate grooming with normal mood and affect. (*Id.* at PageID #: 605, 689, 722, 745-46, 756, 790). After considering the evidence, the ALJ reasonably concluded that Claimant had only moderate limitations in each of the relevant areas. (*Id.* at PageID #: 49). Substantial evidence supports this decision and the Court must defer to it, "[e]ven if the record could support an opposite conclusion." *Nash*, 2020 WL 6882255, at *4.

**2. The ALJ properly considered Claimant's epilepsy in formulating the RFC.**

Claimant next argues that "the ALJ found that Plaintiff had severe impairments including epilepsy but failed to properly analyze the related symptoms and include any limitations in the RFC." (ECF No. 9 at 13). Specifically, Claimant asserts that the ALJ failed to consider that "she was still having at least one to two dyscognitive seizures a month with postictal phenomena of confusion, exhaustion, and emesis along with fatigue and confusion," and "also had side effects from her medication of dizziness, lethargy, coordination disturbance and lack of alertness." (*Id.* at 14). Claimant argues that the ALJ "failed to include limitations of how Plaintiff felt after a

13

seizure and the side effects of her medication" and "failed to provide a sufficient basis for meaningful judicial review with no logical bridge." (*Id.* at 15).

The Commissioner responds that "the ALJ reasonably considered the evidence during the period at issue related to Plaintiff's epilepsy before formulating the RFC." (ECF No. 11 at 21). The Commissioner argues that "[b]y discussing Plaintiff's objective findings, the efficacy of her treatment regimen, and the medical opinion and prior administrative medical findings in the context of Plaintiff's allegations and testimony at the hearing, the ALJ built an 'accurate and logical bridge' between the evidence of record and her conclusions." (*Id.* at 23). The Commissioner asserts that Claimant is "inviting the Court to reweigh the evidence by promoting her own alternative interpretation of the record" but has "failed to show that the ALJ's decision is not supported by substantial evidence." (*Id.* at 24).

The Court finds Claimant's argument meritless. Concerning Claimant's epilepsy, the ALJ explained:

> The claimant required medication management of her epilepsy with noted brain MRI showed right greater than left extensive malformation as well as video EEG findings consistent with multifocal epilepsy (10F/6-9). Despite treatment, she reported persistent seizure activity that included episodes of staring with confusion (10F/6-9, 12F/9-12, 14F, 15F/5-11).
>
> However, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether supported by the objective findings. . . . The evidence contains no evidence of generalized tonic clonic/grand mal seizures leading up to an after the cessation date, but rather, that she experienced "rare staring episodes" with no medication side effects (9F, 10F/6-9, 12F/9-12, 16F/71-76). In fact, she reported no seizure activity between winter 2021 and July 30, 2022 (15F/5-11).

(ECF No. 7, PageID #: 54-55). This discussion makes clear that after considering the relevant evidence, the ALJ concluded that the record did not support that Claimant's epilepsy symptoms were as severe as she alleged. However, the ALJ still included limitations based on Claimant's

14

epilepsy, indicating:

> Due to the effects of her obese body habitus on her maneuverability and the need to take precautions for seizure episodes and post-ictal symptoms, [Claimant] should never climb ladders, ropes, or scaffolds; have no exposure to unprotected heights, driving, or operating heavy machinery/equipment; and no exposure to open flames or bodies of water, or sharp tools.

(*Id.* at PageID #: 55). In making these findings, the ALJ cited evidence indicating Claimant had "no adverse effects to medication," had episodes of confusion but her epilepsy symptoms were "well controlled," and did not experience seizures from "winter of 2021" until July 2022. (*Id.* at PageID #: 616, 651, 686, 774). Substantial evidence supports the ALJ's RFC finding. To the extent Claimant is arguing that the evidence supported greater limitations, she is essentially asking the Court to reweigh the evidence. But it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: August 29, 2024

s/ *Carmen E. Henderson*  
CARMEN E. HENDERSON  
U.S. MAGISTRATE JUDGE